(No. 37774.—

SWAYNE TILLITSON *et al.,* Appellees, *vs.* THE CITY OF URBANA, Appellant.

*Opinion filed September 27, 1963.*

JOHN H. BARTH, City Attorney, of Urbana, for appellant.

JOHN M. MITCHEM and GLEN E. CHAPMAN, both of Urbana, and W. KENNETH PORTER, of Champaign, (DONALD R. ALDEEN, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, the city of Urbana, appeals from a decree of the circuit court of Champaign County which found the city's zoning ordinance invalid insofar as it restricted to residential use certain real estate owned by the plaintiffs, Swayne Tillitson, Marilyn C. McLintock, Phyllis Fritchey, Joseph A. Yeazel, and Edith B. Yeazel, and which enjoined the municipality from interfering with the erection of a gasoline filling station upon the premises. The trial judge has certified that the validity of a municipal ordinance is involved and that public interest requires a direct appeal to this court.

The property in question consists of two adjoining lots situated at the northeast corner of the intersection of Green Street, an east-west four-lane thoroughfare connecting the cities of Champaign and Urbana, and Lincoln Avenue, a

north-south highway having direct access to Interstate Route 74 presently under construction. The lot owned by Tillitson, McLintock, and Fritchey extends 118 feet along Lincoln Avenue and about 70 feet along Green Street. The other parcel, owned by the Yeazels, adjoins the Tillitson lot on the east and fronts on Green Street some 75 feet. Both properties are now improved with 2½-story residences approximately 60 years old, which have in the past been converted into rooming houses to accommodate University of Illinois students. Immediately across the street from this property, at the southeast corner of the Green Street-Lincoln Avenue intersection, is a Standard Oil service station which has been in operation for about 30 years. Although the northwest and southwest corners of the intersection are presently occupied by older-type two-story residences, the former is zoned for neighborhood businesses while the southwest corner is part of a several block area situated south of Green Street and west of Lincoln Avenue which is largely owned by the University of Illinois and is to be developed into student dormitories and automobile parking areas. One block west on the north side of Green Street is situated both a Shell Oil service station and a Texaco service station, the latter being presently unoccupied. Two apartment houses are located immediately north of the Tillitson property on Lincoln Avenue and other apartment houses are located one block south on both sides of Lincoln Avenue. The University of Illinois facilities cover a many-block area commencing one block west of the Green Street-Lincoln Avenue intersection, and the remainder of the immediate area consists largely of older-type residences which have been converted into either rooming houses or student apartments.

Under the zoning ordinance initially adopted by Urbana in 1950, the subject premises and most of the immediate area surrounding it were classified as an R-2 multiple-family residential district which permitted single or multiple-family

dwellings, boarding houses, rooming houses, tourist homes, community buildings, private clubs and lodges, fraternities and sororities, dormitories, undertaking establishments, hospitals, nursing homes, and greenhouses. The only exceptions were the property occupied by the Standard Oil station at the southeast corner of the Green Street-Lincoln Avenue intersection and the parcel one block west upon which the Texaco station is located, both of which were zoned for B-1 neighborhood business district, a classification permitting such uses as apartments, multiple-family dwellings, filling stations, bakeries, professional buildings, restaurants, and retail stores and shops. However, in 1954, a one-half block area on the north side of Green Street just west of the Texaco property was rezoned from an R-2 multiple-family classification to a B-1 neighborhood business district so as to permit the construction of the present Shell Oil service station. In 1959 the lot at the northwest corner of the Green Street-Lincoln Avenue intersection was also reclassified from an R-2 to a B-1 district, and in 1960, when Lincoln Avenue was widened at this intersection, a strip 65 feet in width adjoining the Standard Oil station on the east was re-classified as a B-1 district so as to permit the relocation of the service station facilities. During this same period the University of Illinois acquired several properties on the south side of Green Street just west of the subject properties.

Having received an offer from an oil company to purchase these parcels for a total price of $65,200 for use as a service station, plaintiffs, in 1962, applied for a rezoning from R-2 to a B-1 district, but such request was denied by the Urbana city council upon the recommendation of its planning commission. Thereafter the instant declaratory judgment action was filed alleging the changing conditions in the neighborhood, the unsuitability of these premises for residential use, and the invalidity of the zoning ordinance as applied to plaintiffs' property.

Plaintiffs' evidence indicates that Green Street is one of four major thoroughfares connecting Champaign and Urbana and is the only one which leads directly to a new shopping area being developed in Urbana about six blocks east of plaintiffs' property. Lincoln Avenue is a major north-south roadway running entirely through Urbana and is one of the three highways having direct access to Interstate Route 74 from Urbana. Recently Lincoln Avenue was widened to a four-lane highway at Green Street and also beyond University Avenue some six blocks to the north. Traffic counts taken at the Green Street-Lincoln Avenue intersection showed as many as 18,000 automobiles using the intersection during a twenty-four hour period and almost 1700 vehicles per hour during the traffic peak. Based upon projections of highway engineers, it is estimated that during the next 20 years the traffic will double on Lincoln Avenue and increase 60%-70% on Green Street. Two appraisers valued the combined Tillitson and Yeazel properties at about $37,000 as presently zoned and $65,200 if rezoned for a neighborhood business use, that being the highest and best use thereof. In their opinion the construction of a service station upon the premises would not depreciate the value of the neighboring residential property.

Three individuals testified for the defendant. Robert Johnson described the proposed plans of the University of Illinois for constructing student dormitories southwest of the subject property. George Mitchell testified that the Shell Oil station was built in 1954; that the Tillitson, Yeazel, and other properties in the area had been converted for student rooming or apartments; and that except for the Standard Oil station, the property in the immediate vicinity is used for residential purposes. Mark Brown, who has been engaged in the real estate and insurance business for 30 years, stated that the character of this neighborhood was chiefly residential, and that the Tillitson and Yeazel properties

could continue to be devoted to rooming and apartment uses for the next five or ten years.

It is, of course, well established that a municipality may, in the public interest, restrict the uses and purposes to which private property may be devoted. (Ill. Rev. Stat. 1961, chap. 24, par. 11—13—1; *Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291.) However, such power is not unfettered, and where the restriction bears no real and substantial relationship to public health, safety, morals, or general welfare, it must be set aside as an undue restriction upon the ownership of property. (*Skrysak* v. *Village of Mount Prospect,* 13 Ill.2d 329; *Kovack* v. *Village of La Grange Park,* 18 Ill.2d 233; *Langguth* v. *Village of Mount Prospect,* 5 Ill.2d 49; *Tews* v. *Woolhiser,* 352 Ill. 212.) In determining whether or not a particular ordinance serves the public interest, the court may consider the uses and zoning of nearby property, the extent property values are diminished by the restrictions, the benefits sought to be attained by the ordinance, the relative gain to the public as compared to the hardship imposed upon the property owner, and the suitability of the property for the zoned purposes. (*Exchange Nat. Bank of Chicago* v. *Cook County,* 25 Ill.2d 434; *Krom* v. *City of Elmhurst,* 8 Ill.2d 104; *Bauske* v. *City of Des Plaines,* 13 Ill.2d 169.) If the public gain is small when compared with the hardship imposed upon the individual property owner, the restriction constitutes an unreasonable exercise of the police power. *Kovack* v. *Village of La Grange Park,* 18 Ill.2d 233; *Dalkoff* v. *City of Rock Island,* 17 Ill.2d 342; *Langguth* v. *Village of Mount Prospect,* 5 Ill.2d 49.

When the facts of the instant case are tested by these established standards, we find ourselves in accord with the decision of the trial court that the residential classification of the plaintiffs' property is unreasonable and unrelated to the public health, safety, welfare or morals. From all

of the evidence it appears that plaintiffs' property is being accorded different treatment from other property similarly situated, and that the public interest to be served is either nonexistent or insignificant when compared with the injury which will be suffered if the residential restriction is enforced.

As the record comes to us it appears without question that the intense traffic at the intersection, as well as its recent widening, has had the effect of materially lessening the suitability, desirability and value of the subject property for residential use. Conversely, we would add, there is neither claim nor showing that the residential classification is necessary to the public welfare or safety from a traffic standpoint, or that the proposed business use of the premises would create such changes as to bear a significant and substantial relation to the public safety. (Cf. *Dalkoff v. City of Rock Island,* 17 Ill.2d 342; *Petropoulos v. City of Chicago,* 5 Ill.2d 270.) In like manner, it is uncontradicted that the residential classification works a confiscatory reduction in the value of plaintiffs' premises, and that the value of nearby residential properties would not be substantially affected by the proposed business use. (Cf. *Krom v. City of Elmhurst,* 8 Ill.2d 104; *Northern Trust Co. v. City of Chicago,* 4 Ill.2d 432.) Indeed, a witness for the plaintiffs testified the damage had "already been done" by the businesses already in the immediate vicinity and by the commercialized use of the vast majority of the nearby residences.

While the foregoing considerations are not alone determinative of the reasonableness of the residential classification, they take on added weight and significance when we consider the question whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established. (*River Forest State Bank and Trust Co. v. Village of Maywood,* 23 Ill.2d 560; *Wehrmeister v. County of Du Page,* 10 Ill.2d

604.) The record here shows neither uniformity, nor a long-established adherence to the residential classification. Rather, it shows that the immediate area is interspersed with commercial uses, the majority of which have been rezoned for such purposes and, most significantly, that the land at the northwest corner of the intersection, immediately across Lincoln Avenue from the subject property, was rezoned to a business classification in 1959, just three years before plaintiffs sought a similar classification for their own property. (Cf. *Chicago Title and Trust Co. v. Village of Wilmette,* 27 Ill.2d 116.) Adding to this the circumstances that property at the southwest corner will in the future be developed for student housing and parking, and that the majority of the residential buildings in the immediate vicinity are utilized for student rooming, it is our opinion that defendant's ordinance is unreasonable in its classification of plaintiffs' property.

The decree of the circuit court of Champaign County is affirmed.

*Decree affirmed.*