American Oil Company, Plaintiff-Appellee, v. County
of DuPage, a Body Politic and Corporate, Defend-
ant-Appellant.

**Gen. No. 64–65.**

Second District.

April 23, 1965.

William V. Hopf, State's Attorney, of Wheaton, for appellant.

Ross, Hardies, O'Keefe, Babcock & McDugald, and John M. Daley, all of Chicago (Richard F. Babcock and Donald W. Glaves, of counsel), for appellee.

ALLOY, P. J.

This appeal results from an action for a declaratory judgment declaring the zoning ordinance of the county of DuPage, as applied to plaintiff American Oil Company property, unconstitutional and, incidentally, declaring that said plaintiff has a right to use the property for a gasoline service station. The order of the trial court decreed that the zoning ordinance in question was an unreasonable exercise of power and unreasonably restricted the use of the property and was therefore void as to plaintiff's property insofar as it prohibits plaintiff from erecting thereon a gasoline service station. The trial court decreed that the property owner has a right to use the property for a gasoline service station and that the county officials are enjoined from interfering with the use of the premises for such service station. The defendant county appealed the order directly to the supreme court

of this state, but, on motion of plaintiff, the supreme court transferred the appeal to the appellate court. We are confronted again with an issue which seems to be before the courts of appeal with increasing frequency relating to the reasonableness of a zoning ordinance as applied to a specific parcel of property.

The record indicates that the parcel of property in question is located at the northwest corner of the intersection of Illinois State Highway No. 83 and 75th Street in an unincorporated area of DuPage County. The tract has a frontage of 192.9 feet on Route 83 and 250 feet on 75th Street. Under the DuPage County Zoning Ordinance of 1957, the property is zoned R–3—Single-Family Residence District. The property has been vacant for years.

Route 83 adjacent to the property is a 4-lane divided highway with 2 lanes in each direction. The speed limit at the intersection is 65 miles per hour—the statutory limit in Illinois. 75th Street is an east and west street which has its eastern terminus at Route 83. It runs west to and beyond Route 53 which is another main north and south road. Approximately three-quarters of a mile north of the property Plainfield Road intersects with Route 83. The two corners of that intersection on the west side of the Route (the same side as the property in question) are zoned "B–4" under the county zoning ordinance and are developed with gasoline service stations. The Plainfield Road and 75th Street intersection are similar in that they are the only two east-west through traffic arteries in the area and thus the two constitute major corners. To the east across Route 83 from the property in question is a Shell Oil Company service station, located at a point where 75th Street would actually run into the station if it continued across Route 83. Directly south of the Shell station is the east-west runway of the Hinsdale airport. The runway is contiguous with

Route 83 southeast of the property in question. Low-flying airplanes fly directly over the property as low as 85 to 100 feet. Directly south of the airport runway is a truck terminal used for storage of truck trailers and as a transfer point. The terminal occupies about four acres. The property, including the gas station, the airport runway and the truck terminal, is zoned "M–1" under the county zoning ordinance. The classification extends south to an interchange with Route 66.

Also directly across from the property in question and north of the Shell station is a two-story structure used as a retail store for the sale of poultry. This is located in the "R–3" zone in the Village of Willowbrook. To the north of the poultry establishment is an unfinished residence for which a building permit was issued in 1953. To the south across 75th Street is a residence and on the west side of Route 83 to the south are seven or eight residences of modest value. These houses do not face on Route 83 but front in the opposite direction. The evidence shows that there was no residential construction along the west side of Route 83 south of the property in question for 10 or 12 years.

Across from the property in question and west on the south side of 75th Street there is vacant property and five or six homes located in an area 600 to 800 feet from Route 83. The home directly across from the property in question is 10 or 12 years old and the other homes are at least 20 years old. There is also approximately one mile of vacant land directly west of the property in question on the north side of 75th Street and approximately one mile west is a parochial grammar school of recent construction. The first street north of 75th Street is a short street which runs one block west from Route 83 and then curves to the north for one block. There are several homes built facing on it averaging in value about $15,000 with one directly north of the property in question being of

51

somewhat higher value. North from the property in question on Plainfield Road approximately three-quarters of a mile, the property on the west side of Route 83 is zoned "R–3" and is developed for residential use.

Plaintiff plans to construct a gasoline service station on the property in question and in order to screen the property from the back of the residence directly to the north agreed to install planter areas. There was a conflict of evidence as to whether there would be a depreciation in property values if the premises in question were used as contemplated by the plaintiff. The evidence indicated, as is usually the case in such situations, that the value of the premises for residential use was relatively low (in the neighborhood of $3,000) and that the value of the premises if developed as a gasoline service station was quite substantial (ranging from $25,000 to $40,000). There was also some conflict in the evidence as to whether the property under consideration could be used or developed for residential purposes.

On appeal in this court, the County contends that the classification of the property in question was a legislative determination and that the plaintiff has not discharged the burden of proof to establish that the ordinance was unreasonable, arbitrary or capricious as to its property. In support of this position, the County points out that zoning must begin and end somewhere and that the zoning is in conformity with surrounding and existing uses.

The fixing of boundary lines for zoning purposes, unless arbitrary or capricious, is a matter of legislative judgment and a street may properly form an appropriate boundary of zoning districts (Cosmopolitan Nat. Bank of Chicago v. City of Chicago, 22 Ill2d 367, 176 NE2d 795; Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96). The basic question is

always whether the property under consideration is zoned in conformity with the surroundings and existing uses (Ryan v. County of DuPage, 28 Ill2d 196, 190 NE2d 737; Bennett v. City of Chicago, supra). It is also clear that where there is a legitimate difference of opinion as to whether a particular ordinance is reasonable as applied to a particular property, the courts should not disturb the ordinance but leave it to legislative determination (Wehrmeister v. County of DuPage, 10 Ill2d 604, 141 NE2d 26; Schwartz v. City of Chicago, 19 Ill2d 62, 166 NE2d 59).

■■ The "corner gas station" cases seem to have stimulated most of the zoning considerations which are present in the case before us (Tillitson v. City of Urbana, 29 Ill2d 22, 193 NE2d 1; Chicago Title & Trust Co. v. Village of Wilmette, 27 Ill2d 116, 188 NE2d 33; Atkins v. County of Cook, 18 Ill2d 287, 163 NE2d 826; La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 145 NE2d 65; Petropoulos v. City of Chicago, 5 Ill2d 270, 125 NE2d 522). Counsel in the instant case have correctly divined that courts of appeal have not relished the attempt of litigants to cast trial courts in the role of super zoning boards of appeal. (First Nat. Bank & Trust Co. v. City of Evanston, 30 Ill2d 479, 197 NE2d 705). In most cases of the type which we have under consideration, the finding of the trial court is normally supported unless it is contrary to the manifest weight of the evidence or clearly wrong as a matter of law (La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 48, 145 NE2d 65). The fact that there would be a greater value in the property zoned commercial as against the value for residential purposes is not controlling (Bennett v. City of Chicago, supra) nor is the circumstance that the subject property has not been developed under its present residential classification although both circumstances are factors for consideration. Testing the case before us by the

53

factors which normally are to be taken into considera-
tion, it is noted that the character of the neighborhood
of which the property under consideration is a part,
is determined by its location at the intersection in-
cluding the business uses located along Route 83 (Chi-
cago Title & Trust Co. v. Village of Wilmette, supra;
Tillitson v. City of Urbana, supra). The existing uses
and zoning of nearby property on the basis of the
record are likewise of a nature which gives a com-
mercial characteristic to the area in which the prem-
ises are located. As stated in La Salle Nat. Bank of
Chicago v. County of Cook, 28 Ill2d 497, 500, 192 NE2d
909, it is the combination of various factors together
with the county's own zoning program which is of
particular significance. Other factors which are nor-
mally to be considered are the amount by which
property values are decreased; the extent to which
the diminution in value promotes the general welfare;
the relative gain to the public as compared to the
hardship imposed on the individual property owner;
the suitability of the subject property for the purpose
for which it is zoned; and the length of time under
existing zoning that the property has remained unim-
proved considered in the context of land development
in the area.

■■ Apparently all of the factors referred to were
considered by the trial court. It is noted that not a
single householder in the vicinity appeared in court
to testify on behalf of the County even though the
County objections were largely based upon the circum-
stance that some damage (estimated to be a depreci-
ation of around 10% of value) might result to nearby
residences if the gas station were constructed on the
corner. This isolated circumstance, we must empha-
size again, is not in itself controlling but is referred to
as indicative of the various factors which apparently
were considered by the trial court in determination of

this cause. In reviewing the record we cannot conclude that the trial court improperly applied the standards in determining that the DuPage County Zoning Ordinance was unreasonable and should not be applied as to the particular property under consideration and that the construction of a gasoline service station on such property should be permitted in view of the facts and circumstances shown in the record. This being so, the order of the circuit court of DuPage County will be affirmed.

Affirmed.

STOUDER and CORYN, JJ., concur.