**Western National Bank of Cicero, a Banking Corporation, as Trustee, Under Trust No. 2010, Dated December 11, 1958, Plaintiff-Appellant, v. The Village of Downers Grove, a Municipal Corporation in the State of Illinois, Defendant-Appellee.**

Gen. No. 69–92.

Second District.

April 7, 1970.

Edward Van De Houten, Jr., of Glen Ellyn, for appellant.

Wysong and Cochran, of Downers Grove, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The plaintiff brought this action seeking a declaratory judgment that the property in question could be used for multifamily purposes even though located within a single-family zoning classification of the defendant village. The plaintiff's complaint was based upon two grounds: first, that the existing zoning ordinance was void as applied to its property, and second, that the defendant was estopped by its action to deny the multifamily use. The plaintiff has appealed from an adverse decree of the trial court.

Jaroslav Sedlak, the beneficial owner of the land in question, is a civil engineer. He received his formal education in Czechoslovakia in the 1920's and obtained his

license as an engineer from the State of Illinois in 1960. He purchased the property in 1959. At that time it was improved with a single-family residence which was, however, in a state of disrepair. He lived in the house for a short period of time and then began to repair and remodel it. He continued with the remodelling until he was stopped by the village building inspector and told that he must obtain a permit.

Sedlak then submitted plans for the remodelling, and a permit was issued to him in August of 1960. The permit was, on its face, for a single-family residence, and Sedlak was told that while the plans which he submitted were such that the building could be converted to multiple-family use, the existing zoning permitted only single-family use. Sedlak informed the village inspector that he had hoped to use the building for his large family.

Sedlak proceeded with his remodelling and by the spring of 1962, he had spent approximately $25,000 in so doing. At that time, he petitioned for a change of zoning to permit multiple-family use, and this was denied. He continued with his construction, and in 1966 he again applied for rezoning, which was denied. Later in the spring of 1966, he completed his remodelling at a total cost of approximately $55,000.

Civil engineers and architects testified on behalf of Sedlak that the building was constructed substantially pursuant to the plans that had been submitted to the village. They further testified that in their respective opinions the plans called for a multiple-family, as opposed to a single-family, dwelling. Their opinions were based generally on the following facts: there were two stairways in the building; it had the appearance of two distinct units on each of the two floors, with access from each unit to a stairway; and there were bathrooms for each unit. Thus, there appeared to be four independent units.

The finished building had kitchen facilities for each unit. These were not, however, disclosed in the plans submitted to the village. The plans submitted by Sedlak to the village called for an addition to the existing building of two rooms, plus a bath on the first floor, and two rooms, plus a bath on the second floor.

All of the surrounding property is zoned single-family residential. The property fronts on Highland Avenue; all of the land adjoining it in this area is zoned and used for single-family residential purposes. Also, adjoining or in near proximity to the property—in addition to the new single-family subdivision across the street—are other uses permitted under the single-family zoning ordinance: a church, a school, and across a street to the north, a proposed hospital.

The plaintiff's expert witnesses testified that the highest and best use of the subject property under normal conditions would be in conformity with the existing zoning; however, with the existing building, which had been converted into four apartments, its highest and best use would be as an apartment building. They testified that such use would be compatible with the neighborhood; and that for single-family purposes, the property had a value of approximately $30,000, and for multiple-family purposes, it had a value of between $50,000 and $55,000.

The various factors which are relevant to the determination of the validity of a zoning ordinance as applied to specific property are well known. Tillitson v. City of Urbana, 29 Ill2d 22, 27, 193 NE2d 1 (1963); Myers v. City of Elmhurst, 12 Ill2d 537, 543, 544, 147 NE2d 300 (1958) ; La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 46, 47, 145 NE2d 65 (1957) ; Hoffmann v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177 (1964). All of the surrounding area is zoned single-family residential and is so used, except for the school,

111

church and such uses as are permitted under this zoning classification.

■ One of the basic inquiries to be made when a zoning classification is challenged as being arbitrary is whether the particular property in question is zoned in conformity with the surrounding uses. Bluhm v. City of Chicago, 110 Ill App2d 136, 141, 142, 249 NE2d 108 (1969).

■■ The surrounding zoning and single-family residential use renders the plaintiff's burden of overcoming the presumption of validity of the existing ordinance rather substantial. Bennett v. City of Chicago, 24 Ill 2d 270, 273, 274, 181 NE2d 96 (1962); Kellett v. County of Du Page, 89 Ill App2d 437, 443, 231 NE2d 706 (1967). It is not enough for the plaintiff to show that the property could reasonably be classified for a multifamily use, nor even to convince this court that it might so classify the property. Merchants Nat. Bank of Aurora v. City of Aurora, 119 Ill App2d 179, 255 NE2d 609 (1970). If there is room for a legitimate difference of opinion as to the reasonableness of the ordinance, then the legislative judgment of the municipality is conclusive. Vedovell v. City of Northlake, 22 Ill2d 611, 615, 177 NE2d 124 (1961); Merchants Nat. Bank of Aurora v. City of Aurora, supra; Mutz v. Village of Villa Park, 83 Ill App2d 1, 10, 11, 226 NE2d 644 (1967).

■ The plaintiff's argument—that since the property has remained vacant for a great length of time, the court would be warranted in considering that this was due to improper zoning—is not persuasive for two reasons. First, we are not convinced that the facts in this case establish that the property has remained vacant and undeveloped. When the plaintiff bought the property there was a single-family residence constructed thereon, which he lived in for awhile. Thus, the land

had not been vacant and totally undeveloped for a great number of years as is found in most cases where this factor is discussed.

■ ■ Second, the cases do not hold that evidence that the land has remained vacant, necessarily means that the zoning is improper. The courts have only stated that the length of time that the property has remained vacant, as zoned, as compared with the development of surrounding land, may be one factor to take into consideration in determining the validity of the existing zoning. Treadway v. City of Rockford, 28 Ill2d 370, 377, 192 NE 2d 351 (1963). Also, as stated in Bluhm v. City of Chicago, supra, 145, 146, a party urging this contention must establish that the property is unsaleable, vacant or undeveloped because of the zoning classification. In the case at bar, the plaintiff has failed to prove such circumstance. Absent such proof, we would have no more reason to hold that the vacancy of the property was occasioned by improper zoning than we would to hold that the vacancy occurred because no attempts were made to use or develop the property, or because other difficulties, totally unrelated to zoning, had been encountered.

■ The fact that the plaintiff's property is more valuable if used for multifamily purposes than if used for single-family purposes does not, standing alone, mean that the zoning is improper. The increase in value, if property is put to a more intense use, is normally the case. Elmer Clavey, Inc. v. City of Highland Park, 75 Ill App2d 464, 470, 220 NE2d 93 (1966); Hoffmann v. City of Waukegan, supra, 245. This factor is even less significant in this case were the increase in value is due to the construction completed by Sedlak notwithstanding the existing zoning limitation.

■ Under the circumstances of this case, we believe that the trial court was correct in finding that the existing zoning ordinance is valid.

113

■■ Also, we do not believe that the defendant is estopped to deny the issuance of an occupancy permit to the plaintiff for multiple-family use. We agree with the plaintiff that the doctrine of estoppel may be applied against a municipality even when acting in its governmental capacity. The City of Quincy v. Sturhahn, 18 Ill 2d 604, 614, 165 NE2d 271 (1960) ; Stahelin v. Board of Education School Dist. No. 4, DuPage County, 87 Ill App2d 28, 39, 230 NE2d 465 (1967). If under all of the facts and circumstances of a case, it appears that the affirmative acts of a municipality have created a situation which would render it inequitable and unjust to permit the municipality to later retract what its officers had previously done, the doctrine of estoppel may be applied against it. Gregory v. City of Wheaton, 23 Ill2d 402, 407, 408, 178 NE2d 358 (1961) ; Cities Service Oil Co. v. City of Des Plaines, 21 Ill2d 157, 161, 171 NE2d 605 (1961).

Here, however, the remodelling work on the house was halted when it was discovered that Sedlak was proceeding therewith without a permit. When he filed his plans for a permit, he was informed that while they could be modified so as to permit a multifamily use, the existing zoning permitted only a single-family use. The defendant was lead to believe that Sedlak was hoping to bring additional members of his family to this country to live with him. The plans which he submitted called only for the addition of two rooms, plus a bath, on each floor. There were no plans for the additional kitchen facilities which he built.

Sedlak claims that inspections were made by the village, and that no complaint was made of the remodelling for a multiple-family use. The village counters that inspections were made of the footings and foundations early in the construction; that later inspections were made at

114

the time when complaints were made by neighbors; and that inspections were made of the type of block used in the construction. The village contends that none of these inspections were at a time or place which disclosed anything inconsistent with the remodelling of the house for a single-family use. Our examination of the record satisfies us that the evidence sustains this contention.

In 1962, Sedlak sought rezoning for a multiple-family use, and even though this request was denied, he continued the remodelling work. In 1966 he again sought rezoning, which was denied, but, nevertheless, he completed this remodelling. He constructed kitchens in each unit, even though the plans submitted to the village contained no provisions for kitchens.

The distinguishing feature between this case and those cited by the plaintiff, is that here it does not appear that Sedlak proceeded in good faith in reliance upon affirmative acts of officers of the city, which induced him to remodel the building into a multiple-family structure. Rather, it seems that his course of conduct was self-determined, not fully open or entirely honest in its relation to the village, and despite—instead of in reliance upon—the various acts of the officers of the village.

In Wehrmeister v. Carlman, 17 Ill App2d 171, 149 NE 2d 453 (1958), cited by the plaintiff, the landowner had planned to construct two houses on certain land in a manner permitted by the village ordinances. The village officials induced him to place the houses on the property in another manner. The village, substantially later, tried to prohibit the construction of one of the houses in the location they had approved. The court applied the doctrine of estoppel, but it was clear, under the facts, that the houses had been relocated in good faith in reliance upon the actions of the village officials.

In The People v. Thompson, 209 Ill App 570 (1918), also cited by the plaintiff, the landowner had been issued

115

a permit to construct a public garage, even though it would be within 200 feet of a hospital or school, in violation of an ordinance. After the landowner had spent $30,000 to build the garage, he was denied a license to operate it because of the ordinance. It was clear that the building permit was for a garage. At page 572, the court quoted, with approval, language from an earlier case stating, in effect, that where a party in good faith has acted in reliance upon the affirmative acts of a city, and has made expensive and permanent improvements, that it would be highly inequitable and unjust to destroy the rights acquired, and the doctrine of estoppel will be applied.

The People v. Thompson, supra, is cited in Cities Service Oil Co. v. City of Des Plaines, supra, at page 162, where the court, in referring to Thompson, stated: "the city would not be heard to assert(s) its power to the detriment of one it had induced to act *in good faith* upon its assumed authority." (Emphasis ours.)

 Under the facts and circumstances of this case, the doctrine of estoppel may not be applied against the defendant. It does not appear that the village either induced Sedlak to do what he did, or that Sedlak undertook his project in good faith and in reliance upon the acts of the officers of the village. Thus, the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.