FIRST NATIONAL BANK OF SPRINGFIELD, as Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF SPRINGFIELD, Defendant-Appellant.

(No. 12014;

Fourth District—September 12, 1974.

D. Bradley Blodgett, of Springfield, for appellant.

George B. Gillespie, of Springfield, and Klineman, Rose & Wolf, of Indianapolis, Indiana, for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals from the order of the trial court finding that its zoning classification of described real estate as single-family residence was an unreasonable exercise of its police powers which restricted the use of plaintiff's property without any reasonable basis in public health, safety, comfort, morals or welfare and was hence void and that the erection of a community shopping center in accordance with the evidence was reasonable and proper. The court enjoined the defendant, its officers, agents and employees from interfering with plaintiff's use of the property as a community shopping center. The court reserved jurisdiction for the purpose of enforcing the judgment order.

The trial court made findings of fact including (1) that the City Plan Commission had recommended that the classification be changed from single-family residence to community shopping center and office district; (2) that the property had been vacant for many years and that the owner had been unable to develop it economically as single-family residence; (3) that three corners of the intersection of Wabash Avenue and Chatham Road had been classified and had been developed as commercial uses, and that approximately three-quarters of a mile to the west 50 acres had been zoned as a regional shopping center; (4) that Chatham Road is in the process of being widened to create a four-lane arterial street and as such would increase the traffic even in the absence of the proposed community shopping center; (5) that the residences closest to the proposed shopping center are separated by a State highway with four traffic lanes (Wabash Avenue) and that such residences are screened from the highway by a fence and plantings; that the elementary school on the west of the property naturally separates the area from the residences on the west; that "Jacksonville Branch" (a creek) is a natural boundary on the north, and that traffic lights, school crossing guards and patrols provide adequate safeguards for the children.

The court further found that the west edge of the proposed shopping area will be screened from the school by a 6-foot chain-link fence and 30 feet of trees and shrubs and that such buffer zone will prevent access from the school to the shopping center. Finally, the court found that the highest and best use of the land concerned was as a community shopping

center; that the land was of the value of $30,000 per acre for such use but only $3,000 per acre as a single-family residence use and that there would be no adverse affect on values of nearby property.

We note the physical circumstances and the present uses at the intersection of Chatham Road and Wabash Avenue. The parcel at issue consists of almost 19 acres and is part of approximately 160 acres purchased in 1955. The parcel lies in the northwest quadrant of the intersection of Chatham Road and Wabash Avenue. The latter presently carries the traffic of two state highways. Each thoroughfare has four lanes. Chatham Road will become an arterial street connecting the business center of the city with various residential areas to the south and west of this parcel.

In 1966, after land was taken for highway purposes, a uniform area extending north from the intersection 440 feet along Chatham Road and 260 feet west from the intersection along Wabash Avenue was classified B-1, Commercial. This subject parcel then extends west some 580 feet. It is essentially bounded along the west side by the grounds of an elementary school consisting of some 8 acres. On its eastern dimension this parcel extends north from the B-1 area along Chatham Road approximately 620 feet.

The parcel is bounded on the north by Jacksonville Branch (a creek) and a lot with 50-foot frontage and 140-foot depth which has been set aside for a private pre-school facility. The creek has been widened and reshaped at a cost of over $200,000 to provide drainage for the area. To the west of the entire 160 acres is a development, Colony West.

The southwest quadrant of the intersection is zoned B-1 on its eastern side to the south of Chatham Road. From such zone extending west along Wabash Avenue lies a residential area known as Sherwood. The residences along the south side of Wabash Avenue are faced south and the back is nearest to the highway.

The southeast quadrant is zoned commercial and includes a department store and a nationally known food market with accompanying parking lots. There is also an unused tavern and a gasoline filling station in this quadrant.

The northeast quadrant of the intersection is not within the jurisdiction of the city. There is a filling station at the immediate corner and another nationally known food market with a parking area is developed to the north and east of that service station.

The parcel was acquired as non-zoned farm land. It was annexed to the city of Springfield in the early 1960's on the petition of the owner and apparently no classification was made. The present classification of the real estate as R-2 was made in 1966 when a general zoning re-classifica-

tion of the city was made. At that time the southeast corner of the subject parcel, being the northwest quadrant of the intersection of Wabash Avenue and Chatham Road, was classified B-1, a commercial use for auto service stations, drive-in restaurants and such. At the time of the classification in 1966, the 160-acre parcel was essentially in agricultural use. As stated in sections 49.3.2 and 49.3.3 of the ordinance of the city, R-2 provides for use for agricultural purposes or as single-family detached residential development. In the context of the agricultural use at the time of the classification one is not strongly persuaded that the designation R-2 suggests or indicates a particularly planned scheme for such classification.

Between 1969 and 1972, the southeast and southwest corners of the intersection were classified commercial and developed. So far as the record discloses, the elementary school was built prior to the time of the classification in 1966. In 1970, the southeast quadrant was classified as commercial and an A & P market was constructed. At the time of the trial in 1972, work was proceeding on widening Chatham Road, enlarging it from two lanes to four as an arterial street. The intersection of Wabash Avenue and Chatham Road is under the control of the State Highway Department.

■■ In determining whether or not a particular zoning classification serves the public interest, the court may consider the uses and the zoning of nearby property, the extent to which the property values are diminished by the zoning restrictions; the benefits sought to be gained by the classification and the relative gain to the public compared to the hardship imposed upon the owner; the suitability of the property for the classified purpose and the length of time the land as classified has remained vacant as compared with other land in the vicinity. The issue is whether or not the hardship upon the owner is justified by the benefits to the public. *La Salle National Bank of Chicago v. County of Cook,* 12 Ill.2d 40, 145 N.E.2d 65; *Tillitson v. City of Urbana,* 29 Ill.2d 22, 193 N.E.2d 1.

In this record it is shown without contradiction that the highest and best use of the parcel in the traditional or legal sense is as a community shopping center. The testimony is that the value of the parcel as single-family residence is $3,000 to $4,500 per acre, while its value for the requested use is $30,000 per acre. There is, in, fact, an option to buy at such price.

There is no testimony to the effect that the value of surrounding residential property will be diminished in value.

The director of the Plan Commission for the city of Springfield and

for the county testified to the preparation of an "Urbanized Area Plan" as a recommended staff plan which provided for a community shopping center on the subject parcel. He testified that the Plan Commission had approved such a classification, although it had not been officially adopted. He expressed an opinion that the area to the south and west was rapidly growing in population and that there would be need for a community shopping center. It was his conclusion that such use would not be detrimental to the welfare of the public.

The city traffic enginer described the improvements being made to the highways and the intersection and expressed the opinion that the proposed community shopping center would not create a congestion upon the intersecting streets.

The record discloses that since the date of the classification of plaintiff's land, the defendant has adopted the zoning policies substantially changing the character and quality of the area at the intersection. We have noted the extension of commercial uses to the remaining quadrants. Chatham Road has been made an arterial highway connecting the southwestern part of the city to the downtown business district. Three-quarters of a mile to the west of the intersection an area of 50 acres has been zoned as a regional shopping center. Wabash Avenue has become a four-lane highway for local and through traffic. It is proper to note that changes created by the municipal authorities (*Scott v. City of Springfield*, 83 Ill.App.2d 31, 226 N.E.2d 57) and that these highways may properly be deemed dividing lines betwen the subject parcel and the relatively few residences in the immediate area. *Tillitson v. City of Urbana*, 29 Ill.2d 22, 193 N.E.2d 1.

Jacksonville Branch has been widened to 14 feet at the bottom and the banks raised to 9 feet and creates a natural division from the undeveloped land to the north. The 8 acres of the school grounds along the west side of the parcel screen and divide the subject area from the property to the west.

It is argued that the proposed use of the subject parcel is a detriment affecting the elementary school on the west. The students attending come from the south and west, generally by bus or in private automobile. Those who walk from Sherwood cross a guarded intersection west of the parcel in question. Those from Colony West and Westchester approach the school from the west and it appears that there is no necessity for any student to pass along the front of the area of the shopping center, or cross its drives in approaching school. The school building has no classrooms facing the parcel, and the school parking lot for 40 cars lies between the school and this area. The western boundary of the proposed de-

velopment will have a 6-foot chain-link fence with an intervening 30-foot belt of trees and shrubs. The evidence of detriment to the school is uncertain and minimal. *Hartung v. Village of Skokie,* 22 Ill.2d 485, 177 N.E.2d 328.

■■ It is apparent that the parcel at issue becomes a rather isolated portion of land between the school grounds and the arterial traffic of Chatham Road and the creek which has necessarily been enlarged for the proper provision of drainage, and that the several factors have materially affected the suitability and value of the parcel for residential use. There is no showing that the proposed shopping center use would bear a substantial relation to the public safety. (*Tillitson v. City of Urbana,* 29 Ill.2d 22, 193 N.E.2d 1.) The record is clear that the present classification is not the highest and best use of the parcel, and that the proposed use produces but minimal interference with the use of the other property. Such conclusions overcome the presumption of the validity of the classification. (*Hutson v. County of Cook,* 17 Ill.App.3d 195, 308 N.E.2d 65.) The R-2 classification produces great diminution of value to the plaintiffs, while the gain to the public, if any, is insignificant. *La Salle National Bank of Chicago v. County of Cook,* 12 Ill.2d 40, 145 N.E.2d 65; *Beaver v. Village of Bolingbrook,* 12 Ill.App.3d 923, 298 N.E.2d 761.

It appearing that the findings of the trial court are supported by clear and convincing evidence, the judgment of such court is affirmed.

Affirmed.

SMITH, P. J., and SIMKINS, J., concur.