(No. 32682.

RAY ZILIEN *et al,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed September 24, 1953.*

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and ARTHUR MAGID, of counsel,) for appellant.

McKAY & KRULEWITCH, and WOLFBERG & KROLL, both of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

The city of Chicago here appeals from a judgment of the circuit court of Cook County holding section 10 of the 1942 amendment to the city zoning ordinance unconstitutional and void in its application to certain property either owned or leased by appellees. The trial judge has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

The property involved consists of several parcels of land which front on the west side of South Ashland Avenue between Ninetieth and Ninety-second streets and upon which appellees operate used-car sales lots. The original zoning ordinance of 1923 zoned the property for commercial use, a use which permitted the open-yard storage of cars under certain conditions; by the 1942 amendment, however, the same property was rezoned for business use. The latter use did not permit used-car lots, it appearing, rather, that the amendment clarified and continued the classification of such lots as a commercial use. Appellees did not start to operate their lots until dates which progress from 1946 and, it was not until 1952 that they initiated this action. Their complaint, after alleging that the city threatened to enforce the amended ordinance as to their properties, charged that the rezoning was unreasonable and void as applied to their lands, that it violated divers of their constitutional rights and prayed for appropriate legal and

equitable relief. The city filed an answer putting in issue all the material allegations of the complaint and, after a hearing on the pleadings, the court held the amendatory ordinance void in its application to appellees' property, as being an unreasonable exercise of the police power which arbitrarily restricted the use of such property without any substantial bearing on the public health, safety, comfort, morals or welfare. In reaching this result the record reflects that the trial court found from the evidence that no change had occurred in the area between 1923, when it was zoned commercial, and 1942, when it was rezoned for business, and concluded that since there had been no change, there could be no real or substantial public need for the area to be rezoned and therefore no relation to the public welfare.

On this appeal the city urges that appellees have failed to overcome the presumption of validity which attaches to zoning legislation and, in addition, insists that there is affirmative proof in the record that the rezoning was related to the public good. Appellees contend that the determination of the city council of the need for rezoning is not conclusive but is subject to judicial review; that in this instance there were no changes bearing a reasonable relation to the public need which justified the rezoning; that the rezoning of their property constituted "spot" zoning and that the proper zoning of the blocks in question is controlled by the adjoining commercial property in the blocks to the north and south.

The facts show that Ashland Avenue is an important public thoroughfare running directly north and south through the city of Chicago from 9500 south to 7600 north. It is a major traffic artery bearing both streetcars and busses and serves as a connecting link to main highways running east and west. Under the zoning ordinance of 1923, both sides of South Ashland Avenue, from Ninety-fifth to Eighty-seven streets, were zoned for commercial use. By the amendatory ordinance of 1942, the three

blocks from Ninety-fifth to Ninety-second streets were continued as commercial; the two blocks from Ninety-second to Ninetieth streets were rezoned to business use; the block between Ninetieth and Eighty-ninth street was continued as commercial, and the two blocks from Eighty-ninth to Eighty-seventh streets were rezoned to business use. The leap-frogging pattern pursued thus caused appellees' lots lying between Ninetieth and Ninety-second streets to be rezoned for business use while the property in the blocks flanking them was continued as commercial. It should be noted at this time that the original zoning ordinance divided the city into four use districts as follows: (1) residence, (2) apartment, (3) commercial, (4) manufacturing. The 1942 amendment, however, created nine use districts, namely: (1) single-family residence, (2) duplex residence, (3) group houses, (4) apartment houses, (5) specialty shops, (6) business, (7) commercial, (8) manufacturing, (9) industrial. Because of this refinement in classifications, many uses originally classified as "commercial" were classified as "business" uses under the amendatory ordinance. This feature becomes significant in view of the city's argument that the rezoning was justified and reasonable, the "business" uses which presently exist in the blocks of Ashland Avenue being considered. In that respect, the record shows that the lots on Ashland Avenue between Ninety-fifth and Eighty-seventh streets were largely vacant properties when first zoned "commercial" in 1923 and, for the most part, remained so when the rezoning took place in 1942. Since the latter date the properties in these blocks, excepting the used-car lots of appellees, and other isolated properties, have largely been utilized for uses classified as "business" by the 1942 amendment.

Other pertinent facts show that under the 1923 ordinance all property for more than a mile east of Ashland Avenue between Ninety-fifth and Eighty-seventh streets was zoned for apartment use while the property for more

than a mile west of the same area was zoned for residence use. The area to the west was fairly well built up by the time the 1942 amendment was passed and its classification was continued as a single-family residence area. The area to the east was sparsely settled in 1942, at which time portions of it were rezoned for single-family and duplex residence use. Since 1942, this area has experienced an intensive residential building increase. The residential characteristics of the adjoining areas are likewise advanced by the city as a reasonable basis for rezoning appellees' property from "commercial" to "business."

The decisions of this court announcing the legal principles which must guide a judicial determination of the validity of both original and amendatory zoning legislation are legion and require little citation in this opinion. The power of a municipality to amend its zoning ordinances in the reasonable exercise of its police power is well established. Such power is not unlimited, however, and such an ordinance must have a real and substantial relation to the public health, safety, morals or general welfare. Whether the restraints imposed by a zoning ordinance on the use of private property do, in fact, bear a real and substantial relation to the public good, or whether they are essentially capricious and unreasonable is a question for judicial review. (*Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91.) In turn, the question of its unreasonableness or capriciousness is always a question depending on the peculiar facts and circumstances of the particular case. As stated in *Hannifin Corporation* v. *City of Berwyn,* 1 Ill. 2d 28, (opinion filed at this term of court) : "In each case the problem resolves itself into a weighing of the equities." In approaching the problem it is to be borne in mind that ordinances duly enacted lie behind the bulwark of presumptive validity and the burden is upon the one assailing them to overcome that presumption. Because of this presumption, we have consistently held that it must be clearly and

affirmatively shown that the ordinances attacked are unreasonable and capricious, as claimed, for we will not upset the municipality's action where there is room for a fair and debatable difference of opinion on the question. (*Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162.) Insofar as the property owner is concerned, he has the right to rely upon the rule of law that the classification of his property will not be changed unless the change is required for the public good. (*Phipps* v. *City of Chicago,* 339 Ill. 315.) Therefore, while courts have given the presumption of validity to zoning ordinances, they have not hesitated to examine with care the question of whether the act was an exercise of sound discretion. It is with these principles in mind that we turn to the facts to determine whether the city's action in this case was reasonable and and related to the public good or whether it was an arbitrary and capricious action bearing no such relation.

The city first contends that the reasonableness of the 1942 amendment, as applied to appellees' property, is affirmatively established by the residential character of the areas immediately to the east and west of the rezoned Ashland Avenue frontage. It is urged that the increased residential population created a necessity for more proximate "business" zoning and that proper zoning requires the next possible highest zoning classification adjacent to residential areas. While the principles advanced are no doubt sound, it is our opinion that the argument advanced serves to demonstrate the unreasonable and arbitrary character of the amendatory ordinance as it applies to the lots and blocks in question. In the first place, the intensive residential building in the area to the east occurred largely after the amendatory ordinance was passed, and the zoning classification of the areas both to the east and west was substantially the same under both the original and the amending ordinances. Next, it is to be noted that these residential areas abutted for the full distance of the Ashland Avenue

properties from Ninety-fifth to Eighty-seventh Street. The problems, the public needs and the zoning requirements were the same throughout the entire length of the Ashland Avenue frontage, yet we find that the city continued to zone part of this frontage as "commercial" and zoned as "business" some properties, including that of appellees, that were similarly situated in respect to the adjacent residential areas. No reason suggests itself, nor has any been advanced, which justifies the city's action of alternating between "business" and "commercial" use in the eight blocks of Ashland Avenue frontage involved. It would appear, rather, that certain of the blocks were arbitrarily singled out for rezoning to business use. Another factor which raises doubt as to the public need and of the reasonableness of the 1942 rezoning, is that these areas remained substantially unchanged between 1923 and 1942, the "intensive" residential building, upon which the city relies, not occurring until after 1946.

To further establish the reasonableness of its amendatory ordinance, the city urges that the increase of business uses on Ashland Avenue between 1923 and 1942 justified the rezoning. The fallacy of this argument is that there was no "business" use during the period in question and such uses were necessarily "commercial" under the terms of the 1923 ordinance. Here, again, there appears to have been an arbitrary singling out of certain of the blocks on Ashland Avenue to remain under a "commercial" classification, for the evidence shows that the blocks so classified contained uses newly classified as "business" in equal proportions to the blocks that were rezoned for "business" use. Again, we must consider the additional factor that much of the land still remained vacant when the 1942 amendment was adopted and that, while the classification of the use itself was changed, the character of the use to which the property was being put did not undergo substantial change.

The next contention of the city is that its amending ordinance was reasonable because there were no used-car lots in the entire Ashland Avenue frontal area when the 1942 amendment was enacted. While this fact may demonstrate that the city did not single out any particular enterprise in making its classifications, we fail to see where the absence of any particular use may, in all cases, be said to justify a complete change in zoning classification. It remains that the open-lot storage of vehicles was a use permitted under the 1923 ordinance and that the property owners had a right to rely upon such a classification until the public good required a change.

The final contention of the city touching upon the reasonableness of the rezoning ordinance is that used-car lots would not have been permitted in such close proximity to a residential district as are those of appellees, even under the original 1923 ordinance. Here, again, we see no relation between the operation of the ordinance and the justification for changing the classification of appellees' property. In addition, the record and abstract do not reflect that appellees' legal rights under the 1923 ordinance were made an issue in this proceeding, it appearing, rather, that the city conceded to the trial court that the zoning was such in 1923 as would have permitted the questioned properties to be utilized as used-car lots.

Considering the affirmative evidence upon which the city bases its contentions together with that of the appellees' reflecting no substantial change in the area rezoned which would cause the rezoning to be related to the public good, it is manifest that the erratic pattern of zoning was unreasonable and arbitrary insofar as it applied to the properties owned and occupied by appellees.

The circuit court did not err in granting the legal and equitable relief sought and its declaratory judgment is therefore affirmed. *Judgment affirmed.*