Herman L. Schwinge, Plaintiff-Appellee, v. The Village of Niles, a Municipal Corporation, Defendant-Appellant.

Gen. No. 51,303.

First District, Second Division.

October 29, 1968.

George D. Karcazes, John A. Doyle, and James R. Sneider, of Chicago (George D. Karcazes, of counsel), for appellant.

Bernstein & Ganellen, of Chicago (Sol H. Ganellen and Glenn A. McTavish, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The Village of Niles appeals from a declaratory decree which adopted the findings of a master in chancery that plaintiff's subject real estate was partly zoned R–4 multiple-family residential and partly zoned B–1 retail business, and further that the B–1 classification of the property was arbitrary, unreasonable, discriminatory and confiscatory. The decree orders that the portion of the

subject property zoned B-1 be rezoned to an R-4 classification, which would permit plaintiff to construct an apartment building on the entire subject property. The defendant Village maintains that the findings of the master, adopted by the chancellor, are against the manifest weight of the evidence and further that plaintiff failed to sustain his burden of proving, by clear and convincing evidence, that the B-1 zoning classification of part of the subject property was unreasonable and unrelated to the public health, safety and welfare.

The subject property, located in the Village of Niles, is a 1.16-acre parcel of real estate, measuring approximately 102 feet along its north-south perimeters and approximately 470 feet along its east-west perimeters. In 1954 plaintiff filed a plat of subdivision on which the subject property was designated as "Block A." The property fronts on Nordica Avenue to the east and is bounded along its southern perimeter by the rear lot lines of eight residential lots which front on Jonquil Terrace and which were created by plaintiff's plat of subdivision. The northwest half of the subject property is bounded by a shopping center and the northeast half by townhouses and vacant land. The area to the west of the property is unimproved.

In 1961 the Village of Niles adopted a comprehensive zoning ordinance and issued a district zoning map as required by statute. The area to the southeast and to the south of the subject property was classed R-2 single-family residential; the area to the northeast of the subject property was given an R-4 multiple-family residential classification; and the area to the west and the northwest received a B-1 general business classification.

A copy of the original zoning map, which was attached to a copy of the Village's zoning ordinance entered into evidence, depicts the east-west district zoning line separating the B-1/R-4 districts north of the sub-

ject property from the R–2 district on the south as a heavy, black line measuring some 100 feet in width according to the scale of the zoning map. Witnesses for both plaintiff and defendant testified that the subject property lies directly beneath and within this heavy district line, so that it is not possible to determine whether the subject property falls within the northern B–1/R–4 districts, as plaintiff maintains, or whether it falls entirely within the southern R–2 district, as defendant maintains.

Below are sketches purporting to be the parties' respective theories of the zoning in the area in question. (Fig. I, representing theory of plaintiff, and Fig. II, that of defendant Village):

A city planner, whose office prepared the original district zoning map, testified that in his opinion the subject property lies within the B–1/R–4 districts, but admitted on cross-examination that he "can't be positive about anything . . . ." A city planning and zoning expert testified that his interpretation of the district zoning map placed the subject property within the northern B–1/R–4 districts, in light of the eight residential lots immediately to the south of the subject property which fronted on Jonquil Terrace. A village trustee, serving as such at the time the instant zoning ordinance was enacted, made an offer of proof, since the master had not then determined whether secondary evidence and opinions would be admissible in the case, that it was the intention of the village trustees to zone plaintiff's subject property R–4. Defendant's witnesses, including a real estate appraiser, the village building commissioner, and the village engineer, testified that, in their opinion, the subject property fell within the southern R–2 classification.

 It is apparent there is direct conflict in the evidence presented with respect to the zoning district within which the subject property falls. The district zoning map does not disclose the precise zoning status of the property and recourse must therefore be had to secondary evidence and witness interpretation of the map. Where a master has heard evidence and has made findings of fact, and those findings are approved by the chancellor, the reviewing court will not disturb a decree based thereon unless clearly against the manifest weight of the evidence. Lucey v. Shelton, 24 Ill2d 471, 182 NE2d 215 (1962); Kioutas v. City of Chicago, 59 Ill App2d 441, 208 NE2d 587 (1965). The credibility of witnesses, as well as the weight to be given to their testimony and other evidence entered in the case, present a question to be determined by the trier of fact. Bauske v. City of Des Plaines, 13 Ill2d 169, 148 NE2d 584 (1957);

Gable v. Village of Hinsdale, 87 Ill App2d 123, 230 NE2d 706 (1967). We cannot say that the finding of the master, adopted by the chancellor, that the subject property falls within the B–1/R–4 districts is against the manifest weight of the evidence.

Three witnesses for plaintiff gave evidence that the subject property falls within the B–1/R–4 districts, together with their reasons upon which they based this opinion. Plaintiff filed his plat of subdivision some seven years prior to the adoption of the zoning ordinance by the Village. On the plat plaintiff designated the subject property as "Block A," comprising a large rectangular parcel of real estate, whereas the property immediately to the south was divided into individual residential lots. The only access to a public way from the subject property is to the east, some 102 feet along Nordica Avenue; it would be unreasonable to conclude that the subject property falls within the R–2 district to the south inasmuch as residential lots, if fronted along Nordica Avenue, would have a depth of some 470 feet, or, if fronted along the northern boundary of the subject property, would have a depth of only 102 feet, less street footage necessary to render the lots accessible to the public way. The areas to the north of the subject property, on the contrary, are zoned for uses which generally require larger frontage footage than does a residential lot. It is therefore reasonable to conclude that the intent of the village officials who drew the zoning boundaries was to place the large, undivided subject property area within the B–1/R–4 districts. The physical position and characteristics of the subject property consequently reinforces the evidence given by plaintiff's witnesses.

Defendant contends that, under plaintiff's theory of the case, the east-west district zoning line separating the northern B–1/R–4 districts from the R–2 district on the south would move in an upward direction at the center of Nordica Avenue and then easterly again at the north-

411

east corner of the subject property, due to the existence of the R-2 zoning of the property directly across Nordica Avenue from the subject property. Defendant argues that this causes the district line to run in a jagged manner, not in keeping with the customary manner of setting zoning boundary lines. However, three of plaintiff's witnesses testified that the property to the east of the subject property, across Nordica Avenue, is zoned R-4, leading to the conclusion that the residences in that area are non-conforming uses. Consequently the district zoning line would proceed in an uninterrupted manner from the western end of the subject property to its terminal point far to the east of Nordica Avenue.

██ ██ The Village further maintains that, in any event, the B-1 zoning classification of the west portion of the subject property was not shown by clear and convincing evidence to be unreasonable and unrelated to the public health, safety and welfare. The Village argues that the classification therefore should not have been declared arbitrary, confiscatory and unreasonable. Mindful of the rule that one who attacks the validity of a zoning ordinance has the burden of showing, by clear and convincing evidence, that the classification is arbitrary and unreasonable as applied to his property and is without substantial relation to the public health, safety and welfare, Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96 (1962), we are of the opinion that plaintiff sustained his burden in this regard. It is axiomatic that, in considering whether a particular zoning ordinance is invalid as to a given parcel of property, no single factor will be controlling, but rather consideration will be given to all circumstances. See Chicago Title & Trust Co. v. Village of Wilmette, 27 Ill2d 116, 188 NE2d 33 (1963) ; Hartung v. Village of Skokie, 22 Ill2d 485, 177 NE2d 328 (1961).

██ Evidence was introduced that the portion of the subject property zoned B-1 was not particularly suited to

a commercial use due to its physical position, and that it could be used for commercial purposes only if the practical and economic aspects of the question were disregarded. The subject area zoned B–1 measures only some 102 feet north to south, and some 223 feet east to west. There is no evidence as to the ownership of any of the property surrounding the B–1 zoned portion of the subject property, except that plaintiff owns the portion zoned R–4 to the east. Unless plaintiff sacrificed a strip of the R–4 zoned property to allow access to the B–1 zoned portion from Nordica Avenue, thereby reducing the desirability of the R–4 portion for multiple-family dwelling purposes, the B–1 portion is literally "landlocked." There is also evidence that the entire subject property is best suited for multiple-family dwelling purposes due to its irregular size and the building requirements of the Village. It further appears that the trend of construction from the subject property northerly along the west side of Nordica Avenue is multiple family dwelling.

It should be noted that most of the evidence submitted by defendant at trial, and the main thrust of its position on this appeal, concern the desirability of the entire subject property being zoned R–2, as opposed to a B–1/ R–4 classification, whereas the question now involved is whether the west portion thereof should be zoned B–1 or rezoned R–4. Consequently, the evidence with respect to increase in traffic, increase in noise, garbage removal, the effect on the values of the nearby residential properties, and the like, is without much weight inasmuch as there would be no appreciable difference between the degree of those factors generated by either a B–1 use or an R–4 use. Furthermore, the area would have less of a transient character and would appear less crowded if an apartment building were constructed on the entire subject property, than if several retail

shops were constructed on the west portion and an apartment building constructed on the east portion thereof.

For the foregoing reasons, the decree of the Circuit Court is affirmed.

Decree affirmed.

BURKE, P. J. and LYONS, J., concur.