2 Ill. App.3d 1040 (1971)
278 N.E.2d 114
LA SALLE NATIONAL BANK et al., Plaintiffs-Appellees,
v.
VILLAGE OF HARWOOD HEIGHTS, Defendant-Appellant.
No. 54731.
Illinois Appellate Court  First District.
November 17, 1971.
*1041 *1042 *1043 Ancel, Stonesifer & Glink, of Chicago, (Louis Ancel, and Howard J. Siegel, of counsel,) for appellant.
Maurice J. Nathanson, and Kirkland, Ellis, Hodson, Chaffetz & Masters, all of Chicago, (Frank L. Winter and Edward W. Gray, of counsel,) for appellee.
Affirmed in part and reversed in part.
Mr. JUSTICE BURMAN delivered the opinion of the court:
This is an appeal by the defendant, Village of Harwood Heights, from a judgment of the circuit court which (1) declared the Village's zoning ordinance void as it applied to the plaintiffs' property, (2) enjoined the Village from interferring with the construction of a proposed National Food Store on the plaintiffs' land, (3) ordered the Village to remove a sidewalk curb, and part of Narragansett Avenue from plaintiffs' land, and (4) enjoined collection of the unpaid portions of a special assessment *1044 levied to recover the cost of widening Narragansett Avenue and installing a sidewalk. No questions are raised on the pleadings.
The subject property is located in the Village of Harwood Heights and consists of two adjacent parcels of land which in combination form a rectangular tract of land. The total area is approximately 100,000 square feet of which Parcel One has about 20,000 square feet, and is located in the northwest portion of the subject property. It is held in a land trust by the La Salle National Bank for the benefit of the National Tea Company. Parcel Two consists of the remaining portion and is owned by Mar-Rue, Inc., and leased to National Tea.
The combined premises have a basic frontage of approximately 275 feet along Gunnison Street, its northern boundary, and approximately 365 feet along both Nagle Avenue and Narragansett Avenue, its western and eastern boundaries, respectively. Both Gunnison and Nagle are section-line streets, and the flow of traffic at the intersection of the two is regulated by traffic signals.
To the north of the subject parcel, across Gunnison, is a row of twelve one-story brick retail stores and offices. North of these buildings there are single-family dwellings that extend for a distance of about four blocks. To the west, across Nagle, is the Ridgemoor Country Club golf course. To the east, across Narragansett, are single-family residences, with the exception of four or five two-family residences, which extend for many blocks. Immediately south of the subject site are single-family homes.
The record discloses that National Tea purchased Parcel One in 1967 for $125,000. At that time it was zoned commercial. There was a tavern and an ice cream parlor on Parcel One until the early 1960's when those buildings were demolished. At the time the instant suit was filed, it was still zoned for commercial use, but two months after the commencement of this action, the Village rezoned this parcel to residential. The remaining larger portion, referred to as Parcel Two, was purchased by Mar-Rue, Inc., in April of 1966 for $185,000 and leased to National Tea. This latter portion is and has always been zoned for single-family residential development and has remained unimproved.
In the complaint filed on June 10, 1968, plaintiffs seek to have the entire subject premises zoned commercial in order for National Tea to erect thereon a retail food store with off-street parking. They contend that this is the highest and best use for the subject tracts, that there is a great community need for the food store, and that its presence would not seriously affect either the value of the surrounding property or the health, welfare and safety of the neighboring residents. The defendant Village, on the other hand, contends that plaintiffs have not overcome *1045 the presumption of validity which attaches to the legislative act, that the existing zoning is in conformity with the character of the surrounding property, that the premises can be put to the use for which it is zoned, that the fact that the property may be more valuable if zoned for uses other than those permitted under the existing zoning ordinance is not decisive and that plaintiffs' purchase of the property in the face of the existing zoning restriction thereon is a factor to be considered as well as the neighborhood property owners' reliance on the zoning of the subject site.
The trial court found that:
"From the evidence presented to the court relative to the character of the general area in which plaintiffs' premises are located, the existing use of land in said area, the fact that the above described property is surrounded on three sides by streets, two of which are section line traffic arteries, the fact that the evidence clearly indicates that the highest and best use of the above described property is for a business use, such as that proposed, and that the demand and value of plaintiffs' premises, if improved as proposed, are substantially greater than as restricted by the zoning ordinance of the VILLAGE OF HARWOOD HEIGHTS, and that the adverse effect on neighboring properties, if any, would be small, and that the gain to the public from the development and existence of such use would be great, * * * it would be unreasonable to require the plaintiffs to utilize their premises aforesaid as restricted by the existing zoning ordinance of the VILLAGE OF HARWOOD HEIGHTS."
The court further found that the public health, safety, comfort and welfare did not require the restriction.
 1-3 The principles which must be applied in determining whether a zoning ordinance is void as applied to a specific piece of property are well established. The zoning ordinance, as a legislative determination of the restrictions which may reasonably be placed for the public good upon the use of a parcel of land, is presumptively valid, and one who seeks to challenge the ordinance as applied to a specific parcel must overcome this presumption of validity by clear and convincing evidence that the ordinance is unreasonable and unrelated to the public health, safety and welfare. (Urann v. Village of Hinsdale, 30 Ill.2d 170, 195 N.E.2d 643; Bennett v. City of Chicago, 24 Ill.2d 270, 181 N.E.2d 96.) The basic factors which must be considered in determining whether the ordinance as applied is unreasonable are (1) the existing uses and zoning of nearby property, (2) the reduction in property value resulting from the particular zoning restriction, (3) the extent to which the destruction of property values of the site promotes the general health, *1046 safety and welfare of the public, (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, (5) the suitability of the particular property for the zoned purposes, (6) the length of time the property has been vacant, as zoned, considered in the context of land development in the area where the property is located. See Exchange Nat. Bk. v. Cook County, 25 Ill.2d 434, 185 N.E.2d 250.
 4, 5 It is well settled that one who attacks the validity of a zoning ordinance has the burden of overcoming the present plan of legislative validity by clear and convincing evidence, and when there is room for a legitimate difference of opinion concerning the reasonableness of a zoning ordinance, the determination of the legislative body will not be disturbed by the courts. (Exchange Nat. Bk. v. Cook County, 25 Ill.2d 434, 185 N.E.2d 250.) Nevertheless, the fact that conflicting testimony has been produced from lay and expert witnesses does not necessarily render the plaintiffs' evidence unbelievable or require a finding that the reasonableness of the ordinance is fairly debatable. (La Salle Nat. Bank v. County of Cook, 12 Ill.2d 40, 145 N.E.2d 65.) In cases of this type, it is natural for differences of opinion to exist, but it is for the court to determine whether those differences are reasonable and justifiable. (Myers v. City of Elmhurst, 12 Ill.2d 537, 147 N.E.2d 300.) No single factor is controlling, however, and each case must be judged on its own facts and circumstances. La Salle Nat. Bank v. County of Cook, 12 Ill.2d 40, 145 N.E.2d 65; Peo. ex rel. Larsen & Co., Inc. v. Chicago, 24 Ill.2d 15, 179 N.E.2d 676.
 6 The defendant Village first contends that the zoning of the subject site for single-family residences is in conformity with the existing uses of zoning of the surrounding area and the proposal by plaintiffs to use the site for commercial purposes would be out of conformity with the existing uses. Great reliance is placed on Elmhurst Nat. Bk. v. City of Chicago, 22 Ill.2d 396, 176 N.E.2d 771, where the plaintiffs proposed construction of a supermarket. We note that in Elmhurst a factor that was considered was that there was no commercial use in the entire block in which the subject property was located and that the subject site did not face any such commercial use. The facts in the instant case are sharply different. Here, a portion of plaintiffs' property was zoned commercial at the time it was purchased and when the suit was commenced. The entire block across Gunnison, facing the northern boundary of plaintiffs' property, is devoted to commercial uses. The premises in question are uniquely surrounded by three streets, two of which have heavy traffic. The golf course across Nagle Avenue, although classified residential, can be considered quasi-public property.
*1047  7-9 The Village next contends that purchasers who acquire property in the face of existing zoning restrictions should not be heard to complain that the property would increase in value if the restriction was removed. We agree that the purchase of the larger portion by plaintiffs in the face of the existing zoning ordinance is a factor to be considered. (Treadway v. City of Rockford, 28 Ill.2d 370, 192 N.E.2d 351.) This does not mean, however, that a purchaser of property upon which a restriction had previously been imposed by a zoning ordinance may not attack the validity of such restriction. (Trust Co. of Chicago v. City of Chicago, 408 Ill. 91, 96 N.E.2d 499.) As we stated, Parcel One of the subject property had continuously been zoned commercial before the suit was commenced. John McNamara, a real estate and appraisal expert, testified that National Tea paid $6 per square foot for that parcel, a price which he said was almost three times the going rate for property zoned single-family residential. It is undisputed that the value of the subject plot for business purposes far exceed its value for residential development. We hasten to agree with defendant that this fact is not decisive as it exists in nearly every case where the intensity with which property may be used is restricted by zoning laws. (Liberty Nat. Bank v. City of Chicago, 10 Ill.2d 137, 139 N.E.2d 225.) What is decisive, however, is that the restriction on plaintiff's use of their property is not required for the benefit of the public welfare. As the Supreme Court said in La Salle Nat. Bank v. County of Cook, 12 Ill.2d 40, 45-46, 145 N.E.2d 65,
"[i]t is not the mere loss in value alone that is significant, but the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated. (Krom v. City of Elmhurst, 8 Ill.2d 104.) The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare."
 10 There is, of course, conflict in the evidence on the question of detriment to the adjacent property owners from the proposed use. We think, however, that the evidence justified the trial court's finding that the adverse effect, if any, would be small and that the public welfare does not require the existing restriction. There is no dispute that the area to the north of the subject site, which is already developed with retail establishments and offices, would not be adversely affected by the presence of a National Tea store. The same is true as to the area to the west, which is occupied by a golf course. As to the areas to the south *1048 and to the east across Narragansett Avenue, we think the evidence as to the plans for the proposed National Tea store indicates that the adverse effect, if any, on those properties would be small.
Wilson Thomas, director of real estate for National Tea, testified that the Company plans to erect a one-story building facing Gunnison on the southerly portion of the parcel. A buffer area to the south of the building will be landscaped to minimize any possible deleterious effect on the two single-family homes directly south of the subject premises. Entrances and exits will be confined to Gunnison and Nagle, both of which are already heavily traveled traffic arteries. The plans also indicate that all loading and unloading operations will be screened from view of the houses to the south and to the east and will be far removed from their properties. The area between the store and Gunnison will be used for off-street parking. There will be no access to the premises on Narragansett Avenue facing the residential homes to the east. Narragansett Avenue is a one-way street at this site, with traffic going to the north. Thus, any increase in traffic which could possibly affect the properties to the east of plaintiffs' premises will be negligible.
 11 Defendant further contends that the evidence shows that the subject site is suitable for the use for which it is zoned and that therefore the zoning ordinance ought to be sustained as applied to plaintiffs' property. There is testimony that the subject property could be developed with single-family homes. While the suitability of the subject property for the zoned purpose is one of the factors which courts take into account, the law does not require the property to be totally unsuitable for such purpose to entitle the owner to relief. It is sufficient that a substantial decrease in value result from a classification bearing no substantial relation to the public welfare. (La Salle National Bank v. County of Cook, 12 Ill.2d 40, 48, 145 N.E.2d 65, 69-70.) Even George H. Kranenberg, plaintiffs' witness who for many years has been an active planner and consultant in the Chicago area, when asked on cross-examination whether the property is suitable for single-family, responded with the truism that single-family homes can be built any place, and hence on the subject property.
 12, 13 It bears repeating that in the instant case, plaintiffs' site is located at the intersection of two heavily traveled traffic arteries with controlled traffic lights and has the other unique characteristics already mentioned. It has remained unsubdivided and vacant while property surrounding it has been improved. The vacancy factor is defined in La Salle National Bank v. County of Cook, 12 Ill.2d 40, 47, 145 N.E.2d 65, 69, as `[t]he length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity *1049 of the subject property." Even the Village's expert witnesses disagree as to what is the highest and best use of the premises. Eugene W. Stunard, called by defendant as an expert real estate appraiser, testified on direct examination that in his opinion the highest and best use of the subject property is for multi-family residential. This use, he explained, would result in the highest net return to the owner and is consistent with the immediately adjacent properties. In the opinion of plaintiffs' expert witnesses, the highest and best use for the subject property is for commercial use. They based this opinion on the location and size of the property and the character of the surrounding neighborhood as well as on the value of sale for commercial as opposed to residential development. A portion of the premises was zoned commercial at the time of the filing of the complaint. The premises is one of the few remaining undeveloped tracts of land in this area large enough for development of a major food store with off-street parking. The value of the proprerty, if used for the proposed purpose, is far greater than of subdivided for single-family homes. After considering all of the evidence, the trial court found that the existing zoning restrictions unreasonably imposed undue hardship on the plaintiffs which was not required by the public health, safety or welfare. These findings are amply supported by the evidence and are not contrary to the manifest weight of the evidence and therefore will not be disturbed on review. National Bank v. County of Winnebago, 19 Ill.2d 487.
In addition to declaring the zoning ordinance void as applied to the subject property, the trial court found that the Village had usurped a portion of Parcel Two by installing a sidewalk, curb, and pavement, and ordered the Village to remove the improvements and enjoined the collection of a special assessment levied to defray the costs of the installation.
The Village contends that this granting of relief was erroneous (1) because no objection to the levy was raised at the proceedings to confirm the special assessment, (2) because Mar-Rue never acquired title to the land on which the improvements are located, and (3) because the right to use the land was granted to the public by a common law dedication.
The evidence introduced relating to this issue was at best sparse. Some time during the 1960's the Village widened Narragansett Avenue, a north-south roadway, and installed a curb and sidewalk. These improvements extended along the entire 365-foot eastern boundary of Parcel Two and had a depth of 22 feet. No objection was raised at that time either to the installation of the curb, sidewalk, and additional pavement, or to the confirmation of the special assessment. On August 27, 1966, *1050 Parcel Two "except those parts thereof taken or used for public roads or highways" was conveyed to Mar-Rue, which acquired title with notice of the special assessment and with full knowledge of the existence of the sidewalk, curb, and street. Mar-Rue subsequently paid the special assessments as due and continued to permit the use of the sidewalk and roadway by the public. Almost two years after Mar-Rue's acquisition of Parcel Two, this action was instituted on June 10, 1968. During all of this time taxes were paid on the 22-foot strip by the owner of Parcel Two.
 14, 15 The elements necessary to establish the existence of a common law dedication were set forth in Woodward v. Schultz, 15 Ill.2d 476, at 483, 155 N.E.2d 568, at 572-3:
"Two things are essential in order to establish a dedication of land to the use of the public by means of common-law dedication: The first is an intention on the part of the owner to dedicate, and the second is acceptance by the public. (McCue v. Berge, 385 Ill. 292.) The intent of the owner to dedicate may be established in various ways. Of course, a statement of intention in writing in the form of a conveyance, or a deed, or a grant, is the most obvious. Parol statements wherein the intention is manifest are sufficient. (Smith v. Ladage, 397 Ill. 336.) In fact, the intention to dedicate land to a public use is not unlike establishing intention in other matters and may be shown by any means whereby the intention of the dedicator can be established. (People v. Chicago and Northwestern Railroad, 239 Ill. 42; Ingraham v. Brown, 231 Ill. 356.) In the last cited case, we said `intention may be established in any conceivable way by which it may be made manifest that it was intended to set said strip aside as a public street.'"
 16 The undisputed evidence shows that Mar-Rue's predecessor in title acquiesced in the installation of the improvements and in the use of the land for public purposes, and that in conveying Parcel Two to Mar-Rue those portions of the property used by the public for roads or highways were specifically excluded. This acquiescence in use in combination with the exclusions in the deed evidence an intention to dedicate this 22-foot strip for the benefit of the public. Since the uncontroverted evidence demonstrates an intention to dedicate the use of the land by the public, it was error to order the Village to remove the sidewalk, curb, and pavement.
 17-20 The granting of the injunction enjoining the collection of the special assessment was based upon the erroneous assumption that the public was using the land without right, and it was consequently improper. Moreover, special assessment proceedings are purely statutory. Section 9-2-65 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. *1051 24, par. 9-2-65) provides with respect to the confirmation of special assessments that "The judgments of the court shall be final as to all the issues involved, and proceedings in the specified cause shall be subject to review by appeal as hereinafter provided and not otherwise." It is well settled that a judgment confirming a special assessment is not subject to collateral attack except on a showing that the court lacked jurisdiction to enter it, and such lack of jurisdiction must appear on the face of the record. (Meehan v. Granite City Park District, 347 Ill. 364, 179 N.E. 831.) The record is void of any fact to sustain a direct attack upon the otherwise unchallenged jurisdiction of the court in the special assessment proceedings.
For the reasons stated the judgment of the circuit court declaring the zoning ordinance null and void as applied to the subject property and declaring the plaintiffs' right to use the land as proposed is affirmed. The order directing the Village to remove improvements to Narragansett Avenue, enjoining collection of the special assessments, and requiring the removal of the special assessment as a lien against the subject property is reversed.
Affirmed in part and reversed in part.
ADESKO, P.J., and DIERINGER, J., concur.