MARCELLA JEISY, Plaintiff-Appellee, *v.* THE CITY OF TAYLORVILLE *et al.*, Defendants-Appellants.

Fifth District    No. 79-38

Opinion filed March 3, 1980.

John H. Ward, of Taylorville, for appellants.

Thomas E. Doyle, Jr., of Coale, Taylor, Tipsword & Doyle, of Taylorville, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendants, the city of Taylorville and the planning and zoning commission, appeal seeking to reverse a decree of the circuit court of Christian County declaring invalid a municipal ordinance to the extent that it divides the property of plaintiff, Marcella Jeisy, by a demarcation line which causes one portion to be zoned commercial and the other portion to be zoned residential. The issues raised on appeal are (1) whether plaintiff, by clear and convincing evidence, overcame the validity generally accorded legislative enactments promulgated for the general health, safety and welfare, and (2) whether the trial court erred in judicially declaring the plaintiff's property to be rezoned for commercial uses without remanding to the city council for reclassification in accordance with the court's opinion. For the following reasons we affirm the judgment of the circuit court.

Plaintiff's property, commonly known as 401 Cheney Street, occupies the northeast corner of the block bounded by Spresser Street on the north, Cheney Street on the east, Park Boulevard on the south, and Silver Street

on the west. The property runs for 142 feet along Cheney Street and 100 feet along Spresser. Immediately south of her property and occupying the northwest corner of the intersection of Park Boulevard and Cheney Street is a vacant lot which fronts on Cheney Street for 37 feet and Park Boulevard for 100 feet. To the west of plaintiff's property are three lots which are used for residential purposes and front Park Boulevard. They are backed by a commercial lot, occupied by a small office building and owned by Ray High, which lies along Spresser Street for 150 feet and is 37 feet deep. To the west of these properties is the Johnson Nursing Home, a commercial establishment which, fronting on Silver Street, occupies the entire width of the block and runs approximately 81 feet along both Spresser Street and Park Boulevard. The four parcels of land on the block which are currently used for residential purposes are split-zoned by the line which divides the block into residential and commercial property zones.

The streets which intersect at the corner of plaintiff's property, Spresser and Cheney Streets, are two heavily traveled thoroughfares. On the northwest corner of the intersection are a gas station and a restaurant. On the northeast corner are a large IGA supermarket and a shopping center, and on the southeast corner is an appliance store. On Cheney Street, south of the appliance store, is a residential property upon which there is a house and garden. Along Park Boulevard, east and west of Cheney Street, are residential properties which have been improved by individual residences, and one block south and two blocks west of plaintiff's property is the Taylorville West School.

Plaintiff purchased her property on January 4, 1952. At that time, it was zoned residential in accordance with Ordinance No. 1094, adopted by the city of Taylorville in 1949. In 1964, Ordinance No. 1366 was adopted, repealing the earlier zoning ordinance and providing for the division of the block upon which the property is located. The northern half of the block as well as the northern portion of plaintiff's property were zoned commercial (C-1) and the southern half of the block and southern portion of her property were zoned residential (R-1). This division line was altered when, in 1964, the Johnson Nursing Home obtained reclassification of the southern portion of its property so that a new and larger facility could be constructed. The line transecting the rest of the block was re-adopted in 1972 under Ordinance No. 1617 and in 1977 under Ordinance No. 1793, the subject of this suit.

After receiving an offer from the Big John Super Stores in February of 1977 to purchase her property for $55,000, plaintiff sought an interpretation from the planning and zoning commission concerning the placement of the line transecting the block. At a meeting held on January 3, 1978, the commission interpreted the line to fall so that the northern 89½

feet were zoned commercial and the southern 52½ feet were classified as residential. Plaintiff then filed a request for the rezoning of the southern portion of her property, and after a public hearing on February 20, 1978, the request was denied successively by both the commission and the city council. As a result, plaintiff brought this action.

Plaintiff's amended complaint, filed on April 25, 1978, sought to have the remainder of her property zoned for commercial use. She alleged that the application of Ordinance No. 1793 to her property violated the Constitution of the State of Illinois and the Constitution of the United States in that it was confiscatory and deprived her of her property without due process and the equal protection of the laws. She claimed that the fair market value of her land as residential property was declining in an increasingly commercialized area and that, if zoned commercial, it has almost twice the value that it has as residential property. She alleged that to use the portion of her property zoned residential for a single-family residence would violate the minimum-size requirement, 6,000 square feet, of the present zoning ordinance (Ord. No. 1793, art. IV, §44), since the ordinance as applied leaves her with only 5,250 square feet. She claimed that the ordinance as applied was arbitrary and capricious because when adopted, no footage specifications were indicated on the map which accompanied the ordinance, and the exact placement of the line crossing her property had to be interpreted by the planning and zoning commission because the ordinance as enacted was too vague. Also, plaintiff claimed that she was uniquely affected by Ordinance No. 1793 in that very few properties were divided between the residential and commercial classifications. Plaintiff alleged that she had exhausted her administrative remedies and requested that the ordinance classifying part of her property as residential be declared void as to her property.

Defendants answered on May 12, 1978, denying plaintiff's allegations and asserting that Ordinance No. 1793 is a reasonable exercise of the municipal zoning authority and that its application to plaintiff's property is neither unreasonable nor a violation of her constitutional rights. An answer was also filed on the same date by defendants-intervenors, Terry and Sharon Marsango, owners of the lot to the immediate west of plaintiff's property. A bench trial followed on June 21 and 22, 1978.

Plaintiff's witness, William Culley, director of petroleum and head of the real estate department for the Big John Super Stores, Inc., testified concerning the nature of the proposed use of plaintiff's property as a Huck's Convenient Food Store to sell food items, gasoline and eventually packaged beer. An offer to purchase plaintiff's property for $55,000 was made on condition that the entire parcel would be zoned commercial. He stated that his company considered the corner property as a prime site because of its location across from a large supermarket, the heavy traffic

pattern demonstrated by an aerial study of the neighborhood and his own personal observation of the intersection. He testified that the plans called for a one-story, painted brick building, measuring 40 feet by 70 feet, of which 30 feet cut into the residential 52½ feet, and bearing a sign, three feet long and three feet high, painted with the name "Huck's." He said that another sign, measuring five feet by 10 feet, would be placed on a pole and illuminated at the intersection of Cheney and Spresser Streets and a gasoline pump island large enough to accommodate four cars would be installed in the northeast corner of the lot. The building would be set back from the street near the western boundary line to provide for off-street parking. There would be no back door to the building and air-conditioning and refrigeration equipment would be placed either on the roof of the building or behind it.

Expert testimony was provided for plaintiff by Ray High, a real estate appraiser with more than 20 years' experience, who had appraised property for the city of Taylorville, the State of Illinois, and the Internal Revenue Service. The witness was requested by plaintiff to determine the fair market value of her property as used commercially and residentially. Using the market data approach, which consists of comparing the sales of similar properties in the same or similar neighborhoods, the witness found that the highest and best use of plaintiff's property is as commercial property, which would be valued at $60,000, as opposed to residential property, which would be worth $29,000. He indicated that split-zoning may or may not have a depreciating effect on property, but that plaintiff's property could yield a much better return if zoned entirely commercial. The residential portion would not be desirable for two reasons: (1) the fairly heavy flow of traffic on Cheney Street, and (2) the small size of the lot which prevents the construction of a single-family dwelling in compliance with the zoning requirements regulating minimum lot size. On the basis of his personal observation and familiarity with the 1967 and 1976 traffic maps prepared and published by the Department of Transportation, he stated that there has been a substantial increase in vehicular traffic in the nearby area and on both Cheney and Spresser Streets over the last 10 years. The witness also testified as to the surrounding commercial and residential uses in the area.

Plaintiff Marcella Jeisy testified in accordance with the facts and allegations in her amended complaint. She stated that she received offers in 1960 and 1972 to buy her property for commercial use but never for residential purposes.

Richard Daly, chairman of the six-member planning and zoning commission, was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). He testified

that in the two years he had presided as chairman he had not encountered any other cases of split zoning, although other members indicated to him that similar situations had occurred in the past. He testified that while the ordinance called for the boundaries of zoning districts to fall on natural lines, such as streets, lot lines, and railroads, the purpose of drawing the line through the middle of the block was to separate the residential area from the commercial area and prevent commercial infringement on the residential landowners.

Daly also testified for defendants. He stated that at the first meeting, which was called in January of 1978 for the purpose of interpreting the dividing line, it was noticed that a line dividing the block to the east of plaintiff's property fell on the southern boundary of the appliance store lot, and an effort was made to align the dividing lines of both blocks. He stated that the commission determined that the line, which was reflected in previous zoning maps, split the block in half and therefore was left "to speak for itself." No written findings were made, but Daly stated that certain considerations weighed in the discussion. The possible danger to pedestrian traffic created by the close proximity of the school was mentioned, but he felt this was rejected as an influencing factor. The use to which the property would be put and the effect on the neighbors were of greater concern. The unpleasant appearance of the store seen by those living west and south of plaintiff's property was also a factor in the denial, as was the consideration that the vacant lot south of plaintiff's property was an insufficient buffer between the commercial and residential areas.

On cross-examination Mr. Daly stated that the theory of zoning was to protect the health and welfare of the inhabitants of the area and the best use of the land, but indicated that the interests of the plaintiff were not given consideration. He acknowledged that the area has become more highly commercialized and testified that one of the concerns of the commission was that there were already a grocery store and a gasoline station in the area; the possibility of a business failing and creating a blight in the area weighed in favor of denial of plaintiff's petition. He could not respond immediately as to what was accomplished by the bisection of plaintiff's lot; his only answer was to say that the primary consideration was the character of the neighborhood. He testified that the number of lots affected by split zoning was extremely small.

The Marsangos, defendants-intervenors, testified that their property was immediately west of plaintiff's, that their house faced south toward Park Boulevard, but that their back entrance faced directly east toward plaintiff's lot and was approximately 15 feet from the property line. They testified that they attended the aforesaid zoning meetings, and found for the first time that their property was also split-zoned. They also stated that

they viewed four other Huck's Food Stores in order to have a better idea as to the proposed use of plaintiff's property, and felt the structure and accompanying equipment would annoy them.

On the basis of the evidence and exhibits submitted by the parties, the trial court held that the ordinance was invalid in its application to plaintiff's property and that her property could lawfully be used for commercial purposes. The circuit court concluded that the effect of the defendants' decision was that "when Plaintiff stepped out of her front door' [*sic*] she was entering upon commercially zoned property whereas when she 'stepped out of her back door' she was in an area zoned residential." The court found that defendants' actions

> "* * * represented a serious and highly injurious invasion of the property of the Plaintiff there being no basis for the support of that invasion. There was evidence adduced by Plaintiff which showed that her property value was substantially diminished by zoning ordinance in question. This area is and has been for a very long time highly commercialized. There was also evidence that the highest and best use of Plaintiff's property is as commercial real estate. There was no evidence by the Defendants that persuaded this Court that the zoning ordinance in question bears a real and substantial relation to the public health, safety, morals or general welfare. To the contrary, this Court finds and declares that the Ordinance No. 1793 as it applies to and affects the Plaintiff's property is capricious, unreasonable and confiscatory."

Defendants only appeal, and defendants-intervenors therefore are not parties before this court.

■■ Appellants first contend that appellee failed to overcome the general presumption that legislative acts promulgated for the general health, safety and welfare of the community are valid. It is well established that a municipality may adopt and amend zoning ordinances as an exercise of the police power in order to promote and protect the public health, safety, morals, comfort and general welfare of the people. (*Sinclair Refining Co. v. City of Chicago* (7th Cir. 1949), 178 F.2d 214, 216.) Accordingly, a property owner may be limited in the use of his property by reasonable constraint. (*Galt v. County of Cook* (1950), 405 Ill. 396, 403, 91 N.E.2d 395; *People ex rel. Joseph Lumber Co. v. City of Chicago* (1949), 402 Ill. 321, 330, 83 N.E.2d 592.) In order to be reasonable and valid, however, the ordinance must bear a real and substantial relation to the public health and welfare. *Tillitson v. City of Urbana* (1963), 29 Ill. 2d 22, 27, 193 N.E.2d 1; *Zilien v. City of Chicago* (1953), 415 Ill. 488, 492, 114 N.E.2d 717.

■■ A zoning ordinance may be valid generally and yet be invalid as applied to a particular parcel of property and a particular set of facts.

(*Galt v. County of Cook* (1950), 405 Ill. 396, 403; *People ex rel. Joseph Lumber Co. v. City of Chicago* (1949), 402 Ill. 321, 330.) However, these legislative enactments carry a presumption of validity and one who challenges this presumption has the burden of establishing by clear and convincing evidence that with respect to his property the ordinance is arbitrary, capricious and unreasonable and bears no substantial relation to the public health, safety or general welfare. (*Zenith Radio Corp. v. Village of Mount Prospect* (1973), 15 Ill. App. 3d 587, 592, 304 N.E.2d 754; *Schwinge v. Village of Niles* (1968), 101 Ill. App. 2d 406, 412, 243 N.E.2d 255; *Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 273-74, 181 N.E.2d 96.) Therefore, each case must be determined on its own facts and particular circumstances. *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 1046, 278 N.E.2d 114; *Dalkoff v. City of Rock Island* (1959), 17 Ill. 2d 342, 343, 161 N.E.2d 292.

■■ Among the factors to be considered by a court in reviewing the validity of an ordinance are the character of the neighborhood, the zoning classification and use of nearby property, the extent to which property values are diminished by the particular zoning restriction involved and the gain to the public compared to the hardship imposed on the individual property owner. (*Galt v. County of Cook* (1950), 405 Ill. 396, 404; see *Tillitson v. City of Urbana* (1963), 29 Ill. 2d 22, 27; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65.) No single factor is controlling. Yet if in the final balancing of factors the gain to the public is small in relation to the hardship imposed upon the individual property owner, the zoning limitation constitutes an unreasonable exercise of the police power and the presumption of validity is extinguished. (*Tillitson v. City of Urbana* (1963), 29 Ill. 2d 22, 27; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 47-48.) For the following reasons, we find that appellee demonstrated with clear and convincing evidence that the rezoning of her property as aforesaid is unreasonable, arbitrary and confiscatory and bears no substantial relationship to the public health and welfare.

■■ Appellants argue that the traffic on Spresser and Cheney Streets cannot be increased further without disturbing the residential areas to the west and south of appellee's property. Appellee contends that the presently high volume of traffic contributes to the commercial nature of the area. Traffic intensity is not determinative in zoning cases (*Zenith Radio Corp. v. Village of Mount Prospect* (1973), 15 Ill. App. 3d 587, 594; *Menolascino v. Village of Franklin Park* (1969), 106 Ill. App. 2d 472, 476, 246 N.E.2d 122), but it is a factor that must be considered. (*Northbrook Trust & Savings Bank v. County of Cook* (1977), 47 Ill. App. 3d 879, 888, 365 N.E.2d 433, *cert. denied sub nom. Village of Northbrook v. Northbrook Trust & Savings Bank* (1978), 434 U.S. 1069, 55 L. Ed. 2d 771,

450

98 S. Ct. 1249; *Briscoe v. City of Highland Park* (1966), 74 Ill. App. 2d 257, 261, 219 N.E.2d 390.) Traffic is a pertinent factor here because the subject area is not languid; Spresser is a major thoroughfare, formerly Route 48, and Cheney Street is heavily traveled by those crossing the city of Taylorville and those living in the southern part of town. The prospective buyer of appellee's property chose the location partially because of the existing heavy traffic pattern. The evidence does not demonstrate that this additional commercial establishment would increase the traffic flow to any appreciable extent, and it has been held that heavy traffic militates against a residential classification for property abutting the street. *Tillitson v. City of Urbana* (1963), 29 Ill. 2d 22, 28; *Chicago Title & Trust Co. v. Village of Wilmette* (1963), 27 Ill. 2d 116, 124, 188 N.E.2d 33; *Dalkoff v. City of Rock Island* (1959), 17 Ill. 2d 342, 346; *Tews v. Woolhiser* (1933), 352 Ill. 212, 219.

Appellants also contend that the construction of a convenience store on appellee's large corner lot will have a detrimental effect on the surrounding property. The evidence, however, justifies the finding of the trial court that the adverse effect, if any, will be so slight as to not require the maintenance of the residential classification for the public welfare. Of paramount importance here is the fact that the proposed use of appellee's entire lot is in harmony with the commercial uses presently existing on the other three corners of the intersection of Spresser and Cheney streets. (See *Liberty National Bank v. City of Chicago* (1956), 10 Ill. 2d 137, 144-45, 139 N.E.2d 235; *National Boulevard Bank v. Village of Schaumburg* (1979), 76 Ill. App. 3d 388, 394 N.E.2d 1320, 1326.) The disputed residential section would simply be added to the northern portion of appellee's property which has already been zoned for commercial use by the planning and zoning commission.

■■ Appellants argue that to change the zoning classification to commercial will cause the value of nearby residential property to depreciate, apparently taking note of the Marsango property which abuts appellee's property to the west. The record does not demonstrate that any depreciation in value would occur. Even if a diminution in value were shown, this would not necessarily preclude the proposed use. (*National Boulevard Bank v. Village of Schaumberg*, (1979), 76 Ill. App. 3d 388, 398, 394 N.E.2d 1320, 1327.) The house on the Marsango property *as well as* those occupying the other two residential lots do not front the subject property. Rather, they face away from it and toward land across Park Boulevard, which is occupied by single-family dwellings. These homes on the north side of Park Boulevard take their residential character and value from this perspective rather than from commercial establishments on the other side of the block and their valuation is not shown to be adversely affected.

Moreover, the Marsangos testified only to their dislike of living next to a commercial establishment. Jeff Thomason, owner of two lots on the south side of Park Boulevard testified he would not have bought his property had he known that the convenience store would be built on appellee's property, even though he did know that part of the property was zoned commercial. The assessment of the gain to the public welfare cannot be influenced by the mere preferences of nearby property owners, for it has been noted that an individual's use of his property cannot be limited soley because neighboring property owners do not like the proposed use or fear it will harm the value of their residences. *Northbrook Trust & Savings Bank v. County of Cook* (1977), 47 Ill. App. 3d 879, 889; *Regner v. County of McHenry* (1956), 9 Ill. 2d 577, 582, 138 N.E.2d 545.

Appellants contend that appellee was not treated arbitrarily and discriminatorily by their action. However, the chairman of the planning and zoning commission was unable to testify to any purpose that would benefit the public welfare when the zoning of appellee's property took place. The line was located on her property by simply extending the dividing line from the end of the commercial use across the street, without taking into consideration the effect of the division of her property.

■■■ The block is admittedly a small one with no alley to divide the use classifications. However, dividing one property owner's parcel into two classifications in order to divide the block in half is inappropriate, particularly where zoning classification division lines, according to the city zoning ordinance, should normally fall along natural boundaries. In this instance, the commission was trying to protect the abutting residential area from commercial infringement without showing that the additional 52½ feet of commercial use would be detrimental to the neighborhood and without concern for the burden placed upon the property owner. The commission had resolved that there were enough commercial establishments in the area and feared the failure and abandonment of an already established commercial enterprise. Zoning, however, cannot be used to protect the economic interests of existing businesses without the express delegation of such power to the municipality. *Exchange National Bank v. Village of Skokie* (1967), 86 Ill. App. 2d 12, 20-21, 229 N.E.2d 552.

The gain to the general public welfare is insignificant in comparison to the hardship imposed upon appellee. To maintain the southern portion of her property as residential will not forestall the eventual addition of commercial establishments to the area. The effects of allowing the construction of a commercial enterprise will probably be the same whether it occupies a lot 89½ feet by 100 feet or 142 feet by 100 feet. This seems borne out by the fact that the city council had already determined

that the presence of commercial establishments would not adversely affect the traffic intensity, pedestrian traffic or character of the neighborhood by rezoning the northern half of the block commercial in 1964.

Appellants argue that appellee has not been deprived of the full use of her property, and that therefore the ordinance has not invaded her property rights to the point of being confiscatory. Yet, the division of her property has left her with a residential lot that is of insufficient size for a single-family dwelling. While appellants contend that a variance would allow the property to be used for residential purposes or the attachment of the vacant lot to the south by adverse possession would provide an adequately sized lot, both suggestions are purely speculative. What is not conjecture and surmise is that appellee presently cannot sell the smaller portion of her land as residential property available for building, and she loses the opportunity to sell her entire lot to a willing commercial buyer.

Appellee's expert witness, whose testimony was uncontroverted, attested to the fact that the highest and best use of her property is commercial. If commercial use is allowed, the property is worth twice as much as its value as residential property. "The effect of a zoning ordinance upon land values is not controlling, but is a proper element to be considered and may be persuasive in passing upon the validity of the ordinance." (*Galt v. County of Cook* (1950), 405 Ill. 396, 404.) In the case at bar it is not the mere loss in value alone that is significant, but it is that fact coupled with the fact that public policy does not require the restriction which is significant. See *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 47-48.

■■ After considering all of the evidence, the trial court found that the zoning limitation currently in effect unreasonably caused appellee undue hardship which was not required by the public health, safety and welfare. These findings are thoroughly supported by the record, are not contrary to the manifest weight of the evidence, and will not be disturbed on review. *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 1049.

Appellant further contends that in ruling that the southern portion of the property may be lawfully put to commercial use, the trial court erred in the scope of its judgment. They argue that the municipal body to which the zoning function is delegated has the primary responsibility for deciding the question of proper use and drawing the line of demarcation. However, whether the restraints imposed on the use of private property substantially relate to the public health, safety and welfare, or are capricious, arbitrary and confiscatory are questions subject to judicial review. *Zilien v. City of Chicago* (1953), 415 Ill. 488, 492; *Galt v. County*

*of Cook* (1950), 405 Ill. 396, 403; *People ex rel. Joseph Lumber Co. v. City of Chicago* (1949), 402 Ill. 321, 330.

■■ If the zoning ordinance is deemed reasonable or its reasonableness is merely subject to a difference of opinion, the legislative determination must stand as valid with respect to an individual's property. (*La Salle National Bank v. County of Cook* (1977), 52 Ill. App. 3d 76, 80, 367 N.E.2d 131, 134; *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 1046.) But if, in reviewing the validity of a zoning ordinance, the court finds it invalid as to a particular parcel of land, it may so declare and may frame its judgment in terms of the use requested. (*Tower Cabana Club, Inc. v. City of Chicago* (1955), 5 Ill. 2d 11, 123 N.E.2d 834.) The Illinois Supreme Court has legitimized the propriety of such an order as an available remedy for one who seeks to challenge the validity of a zoning ordinance.

"In our opinion, it is appropriate for the court to avoid these difficulties by framing its decree with reference to the record before it, and particularly with reference to the evidence offered at the trial. In most of the cases that have come before us in recent years, a specific use was contemplated and the record was shaped in terms of that use. In such cases the relief awarded may guarantee that the owner will be allowed to proceed with that use without further litigation and that he will not proceed with a different use. If the land owner asserts a broader challenge in terms of a class of uses, the decree may be shaped accordingly." *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 379, 167 N.E.2d 406.

For all the foregoing reasons, we find that the trial court did not err in rezoning the remainder of appellee's lot as commercial property. Accordingly, the judgment of the circuit court of Christian County is affirmed.

Judgment affirmed.

JONES, P. J., and KASSERMAN, J., concur.